# DISTRICT COURT OF GUAM
# TERRITORY OF GUAM

HWANG JIN YEONG,
aka Jin Yeong Hwang,

Petitioner,

vs.

UNITED STATES OF AMERICA,

Respondent.

Criminal Case No. 00-00150

Civil Case No. 04-00039

**ORDER**

Petitioner Jin Yeong Hwang ("Hwang") filed a Motion to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody pursuant to 28 U.S.C. § 2255 ("Motion").[1] The Court deems the matter appropriate for decision without oral argument. FED.R. CIV. P. 78. After considering all the submissions, the Court DENIES Hwang's motion in its entirety.

## BACKGROUND

On February 5, 2001, Hwang pled guilty to one count of Conspiracy to Import over 50 grams of Methamphetamine, in violation of 21 U.S.C. § § 952(a), 960 and 963. At the time of his plea, Hwang stipulated to facts contained in his plea agreement that he participated in a conspiracy with others to import 9,000 - 10,000 grams of crystal methamphetamine a/k/a 'ice' from the Philippines into Guam for purposes of distribution and profit.[2] On November 13, 2002, the Court sentenced Hwang to one hundred sixty-eight (168) months imprisonment. The judgment of conviction was entered on the docket on November 19, 2002. In November 2002, the petitioner filed an appeal with the Ninth Circuit. On June 20, 2003, the appellate court

---

[1] Hwang filed his initial Motion and brief in support of his motion on August 27, 2004. *See,* Docket No. 82 and 83, respectively. On April 27, 2005, Hwang filed a letter to include additional grounds in light of the newly decided case, *United States v. Booker*, 125 S.Ct. 738 (2005). *See,* Docket No. 94A. The Court will construe Hwang's letter as an addendum to his original motion. Both filings will be referred to collectively as the "motion."

[2] *See,* Plea Agreement at ¶ 8, Docket No. 19.

affirmed Hwang's conviction. *United States v. Hwang Jin Yeong*, No. 02-10617 (9th Cir. June 20, 2003). Hwang *pro se* and incarcerated, brought this motion pursuant to 28 U.S.C. § 2255, requesting the Court to vacate his sentence. *See,* Docket Nos. 82 and 94A.

## ANALYSIS

28 U.S.C. § 2255 allows persons in federal custody to collaterally challenge the constitutionality, legality or jurisdictional basis of the sentence imposed by a court.[3] *See, United States v. Addonizio*, 442 U.S. 178, 185, 99 S.Ct. 2235, 2240 (1979). Since such a challenge calls into question a conviction's finality, collateral relief is an extraordinary remedy that should only be granted when a fundamental defect could have resulted in a complete miscarriage of justice, or the rudimentary rules of fair procedure were not followed. *United States v. Timmreck*, 441 U.S. 780, 783, 99 S. Ct. 2085, 2087 (1979).

*Hwang* claims that he is entitled to relief for the following reasons: 1) his sentence was improperly enhanced in light of *United States v. Booker*, 125 S.Ct. 738 (2005); 2) the government breached the plea agreement at sentencing, by failing to move for a reduction for "substantial assistance" pursuant to U.S.S.G. § 5K1.1;[4] 3) his sentence was imposed in violation of the law, specifically by the Court's consideration of dismissed counts II and III in determining his sentence; 4) the Court erred in failing to award him a downward departure for "cultural assimilation;" 5) his plea was involuntary because he is actually innocent; 6) counsel was ineffective for failing to investigate his case properly or to inform the Court at the time of the plea that Hwang was innocent; and 7) counsel at sentencing and on appeal was ineffective because he failed to address the issues raised in two through six above.

### Applicability of *Booker*

Hwang claims that his sentence was unconstitutionally enhanced in light of the recent Supreme Court decision *Blakely v. Washington,* 124 S. Ct. 2531 (2004) and *United States v.*

---

[3] The statute states, in pertinent part:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255.

[4] Hwang was sentenced under the 2001 edition of the *United States Sentencing Commission Guidelines Manual.* ("U.S.S.G.") Accordingly, any mention of the U.S.S.G. herein shall refer to that edition.

*Booker*, 125 S.Ct. 738 (2005). Because Hwang's claim was final when *Blakely* was decided, *Blakely* and by extension *Booker*, are applicable only if they apply retroactively to cases on collateral review.

Justice Breyer expressly stated that *Booker* applied only "to all cases on direct review." 125 S. Ct. at 769. Further, all federal courts addressing this same issue of retroactive application have held *Blakely* and *Booker* do not apply retroactively to cases on collateral review. *See, Green v. United States*, 397 F.3d 101 (2nd Cir. 2005); *Guzman v. United States*, 404 F. 3d 139 (2nd Cir. 2005); *Humphress v. United States*, 398 F.3d 855 (6th Cir. 2005); *McReynolds v. United States*, 397 F. 3d 479 (7th Cir. 2005); *In re Anderson*, 396 F. 3d 1336 (11th Cir. 2005); *Varela v. United States*, 400 F. 3d 864 (11th Cir. 2005); *Tuttamore v. United States*, 2005 WL 234368 (N.D. Ohio, 2005). Accordingly, Hwang's claims that *Booker* applies to his sentence and his counsel was ineffective in this regard are equally without merit.[5] Hwang's requests with respect to these claims are denied.

**Procedural Bar**

Hwang did not raise the remaining claims in the District Court prior to judgment in the criminal case and on direct appeal. Claims not asserted previously, although available, are procedurally barred absent a showing of cause and actual prejudice. *United States v. Frady*, 456 U.S. 152, 166 (1982). "Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either 'cause' and actual 'prejudice,' or that he is 'actually innocent.'" *Bousley v. United States*, 523 U.S. 614, 622 (1998).

As noted, Hwang did not raise/object to the issues he asserts in the instant petition before either the trial/sentencing court or appellate court. However, Hwang states that he did not address them previously because of ineffective counsel. *See, Murray v. Carrier*, 477 U.S. 478, 488 (1986) ("[i]neffective assistance . . . is cause for a procedural default"). Accordingly the Court will consider Hwang's claims in that context.

---

[5] Even if *Booker* could be applied retroactively, the Court notes that the defendant has failed to provide any evidence that his sentence would have been different had the sentencing judge known that the guidelines were merely advisory.

**Ineffective Assistance of Counsel Claims**.

To demonstrate ineffective assistance of counsel, the petitioner must show both that his counsel's performance was deficient and that the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A petitioner fulfills the first prong of the *Strickland* test by showing that "the behavior complained of falls below prevailing professional norms." *United States v. McMullen*, 98 F.3d 1155, 1158 (9th Cir. 1996). An inquiry into counsel's conduct probes "whether counsel's assistance was reasonable considering all the circumstances." *Strickland*, 466 U.S. at 688. In engaging in such an inquiry, the Court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" especially where counsel's acts may be considered "'sound trial strategy.'" *Id.* at 689. Counsel is not required to pursue all non-frivolous claims. As a matter of professional judgment, competent counsel may recognize an advantage in focusing on central issues rather than pursuing numerous weak ones. *Jones v. Barnes*, 463 U.S. 745 (1983).

*Application of U.S.S.G. § 5K1.1*. Hwang contends that his sentencing/appellate counsel was ineffective because he neither objected to nor raised the issue regarding the government's failure to move for reduction of the offense level based on "substantial assistance" provided by Hwang.

Hwang's argument is without merit. Only the government can move for a downward departure below the guideline range for "substantial assistance" under § 5K1.1.[6] In this instance the government chose not to take such action. The plea agreement states that "[i]f the United States believes the defendant has provided 'substantial assistance' pursuant to [18 USC § 3553(e)], the United States may **in its discretion** request the Court to depart below the guideline range when fixing a sentence for this defendant . . ." (emphasis added) *See,* Plea Agreement at ¶ 5, Docket No. 11. Further, it provides the following criteria under which the government would determine if a 5K1.1 motion was warranted:

> 1) the United States' evaluation of the significance and usefulness of any assistance rendered by defendant;
>
> 2) the truthfulness, completeness, and reliability of any information or testimony provided by defendant;

---

[6] U.S.S.G. § 5K1.1 provides in pertinent part, "[u]pon motion of the government stating that the defendant has provided substantial assistance in the investigation or the prosecution of another person who has committed an offense, the court may depart from the guidelines."

|   |     |                                                                 |
|---|-----|-----------------------------------------------------------------|
| 1 | 3)  | the nature and extent of defendant's assistance;                |
| 2 | 4)  | any injuries suffered or any danger or risk of injury to defendant or defendant's family resulting from any assistance provided by defendant, and; |
| 4 | 5)  | the timeliness of any assistance provided by defendant.         |

*Id.*

Here, the "information" provided by Hwang was limited to providing four names. Two of the four individuals named were directly involved with the drugs in the instant case. The remaining two persons were those Hwang merely knew of or whose names he had heard mentioned in connection with drugs in general. This information was provided at a single debriefing the day after Hwang entered his plea.[7] Hwang argues that because he gave all the information that he had he should be entitled to a substantial assistance departure pursuant to the terms of the plea agreement. He is mistaken. The plea agreement is quite clear that the government retains the discretion to determine whether or not Hwang has provided substantial assistance. The government maintains that the information provided was simply not enough, and that it did not yield any actual results (it did not further any investigation, or lead to other arrests or convictions).

Hwang has not demonstrated that the government acted in bad faith, nor has he shown that his information was actually used. Nothing remotely "substantial" came from the information Hwang provided. Further, Hwang has not produced any evidence of an "unconstitutional motivation" on the part of the government in failing to make such a motion. *See Wade v. United States*, 504 U.S. 181, 185-186 (1992) ("[F]ederal courts have authority to review a prosecutor's refusal to file a substantial-assistance motion and to grant a remedy if they find that the refusal was based on an unconstitutional motive. For example, a defendant would be entitled to relief if a prosecutor refused to file a substantial-assistance motion because of the defendant's race or religion").

In sum, Hwang has failed to show that the government acted in "bad faith" or had any improper motivation whatsoever. Likewise, Hwang's contention that the government breached

---

[7] The Court notes that over one and one-half years expired between the time Hwang entered his plea and the time he was sentenced. He had more than ample time to provide information that could have resulted in a reduction under 5K1.1. In fact, on one occasion, the government agreed to delay Hwang's sentencing for an additional six months in order to facilitate Hwang's cooperation. No new usable information materialized. *See*, Docket No. 15.

the plea agreement for refusing to move for a "substantial assistance" departure, fails. Accordingly, the Court finds that a departure pursuant to § 5K1.1 was not warranted. And, his claims of ineffective assistance of counsel in this regard are without basis.

*Application of U.S.S.G. § 2D1.1(b)(4)(A) and (B).* Hwang contends that his sentencing/appellate counsel was ineffective because he failed to object to or raise the issue regarding the Court's application of § 2D1.1(b)(4)(A) and (B)[8] in determining the appropriate offense level. Moreover, Hwang maintains that the Court's application of § 2D1.1(b)(4)(A) and (B), imposing a two level enhancement, was contrary to law since the Court considered the counts that were dismissed in imposing a two level upward departure.[9]

Hwang's argument is without merit. The record is devoid of any evidence that the Court considered the dismissed counts in its application of § 2D1.1(b)(4)(A) and (B). The count to which Hwang pled involved a conspiracy to import methamphetamine. The nature of this charge alone is sufficient to invoke the application of § 2D1.1(b)(4)(A) and (B).

Assuming *arguendo* that the Court considered the dismissed counts, the stipulated facts entered into between the government and Hwang at the time of his plea and subsequently affirmed under oath in the plea colloquy[10] contradict Hwang's contentions. Hwang admitted in

---

[8] U.S.S.G. § 2D1.1(b)(4)(A) and (B) provide in pertinent part, "[i]f (A) the offense involved the importation of . . . methamphetamine . . . and (B) the defendant is not subject to an adjustment under § 3B1.2 (Mitigating Role), increase by 2 levels."

[9] Count II, Importation of Methamphetamine and Count III, Attempt to Possess Methamphetamine with Intent to Distribute were to be dismissed pursuant to the plea agreement after the defendant was sentenced.

[10] The relevant portion of the audio from the change of plea hearing on February 5, 2001 is as follows:

| | |
|---|---|
| Court: | Now, Mr. Yeong, the facts stated in paragraph eight as to what happened here that's in your plea agreement there - |
| Hwang: | Yes. |
| Court: | - that's what happened in this case? |
| Hwang: | Yes. |
| Court: | Now, did you agree with somebody that methamphetamine was to be brought in from the Philippines? |
| (Translation/ response not audible) | |
| Court: | Let me give you a suggestion. Why don't you translate the facts to him just so that everything is clear in his mind. |
| Bischoff: | What's that suggestion your Honor? |
| Court: | I'd suggest the translator just translate the facts in the plea agreement to him to refresh everything just in case he might be a little - he might have forgotten part of it. If you'll look at paragraph eight and just translate that to him. |
| (Translation) | |
| Hwang: | That's correct. |
| Court: | Okay. That's what happened in this case, the facts in that plea agreement? |
| Hwang: | Yes. |
| Court: | Do you wish to add anything to it? |
| Hwang: | No. |

the stipulated facts to being involved in and aiding and abetting co-defendant Jae June Pak ("Pak") in the actual importation of methamphetamine from the Philippines into Guam. *See* Plea Agreement at ¶ 8, Docket No. 11.

Hwang was also informed of and agreed that U.S.S.G. § 1B1.2 applied in his case.[11] Hwang further agreed in his plea agreement, that he "understands that the facts he stipulates to herein will be used, pursuant to [U.S.S.G. §] 1B1.2, in calculating the applicable guidelines level."[12] *Id.* at ¶ 7. A sentencing judge must consider only conduct included in the plea agreement when selecting a guideline under § 1B1.2. *United States v. Crawford*, 185 F.3d 1024 (9th Cir.1999). The Court was required to use the importation guideline due to the stipulations in the plea agreement. If more serious conduct is "specifically established" by stipulations in a plea, then § 1B1.2(a) requires the district court to consider that conduct in selecting a guideline range. *See, United States v. Saldana*, 12 F.3d 160 (9th Cir.1993) (requiring district court to consider under § 1B1.2(a) more serious conduct specifically established by plea agreement). Accordingly, Hwang's contention that the guideline considering the importation was improperly applied, fails. And, his claim of ineffective assistance of counsel in this regard is without basis.

*Application of U.S.S.G. § 5H1.6 and 5K2.0.* Hwang claims that his counsel was ineffective at sentencing because he did not request an application of guideline sections 5H1.6

---

        Court:        Government, would you be prepared to prove those facts if this were to have gone to trial?
        Gov:         Yes, your Honor.
        Court:        How do you now plead to the charge Mr. Yeong, guilty or not guilty?
        Hwang:      Guilty.

[11] U.S.S.G. § 1B1.2 provides in pertinent part:

  (a)    Determine the offense guideline section in Chapter Two (Offense Conduct) applicable to the offense of conviction . . . However, in the case of a plea agreement . . . containing a stipulation that specifically establishes a more serious offense than the offense of conviction, determine the offense guideline section in Chapter Two applicable to the stipulated offense.

  (b)    After determining the appropriate offense guideline section pursuant to subsection (a) of this section, determine the applicable guideline range in accordance with § 1B1.3 (Relevant Conduct).

  (c)    A plea agreement . . . containing a stipulation that specifically establishes the commission of additional offense(s) **shall** be treated as if the defendant had been convicted of additional count(s) charging those offense(s). (emphasis added).

[12] The application notes for this subsection of the guidelines explains this further, indicating "a factual statement or a stipulation contained in a plea agreement . . . is a stipulation for purposes of subsection (a) only if both the defendant and the government explicitly agree that the factual statement or stipulation is a stipulation for such purposes."

and 5K2.0.[13] Moreover, Hwang maintains that he was entitled to said downward adjustment for cultural assimilation pursuant to *United States v. Lipman*, 133 F.3d 726 (9th Cir. 1997).

Hwang misunderstands the application of cultural assimilation. *Lipman* recognized cultural assimilation as a proper basis for downward departure for defendant's charged under 8 U.S.C. § 1326,[14] who have adapted to American culture and who after deportation have returned to the United states for cultural rather than economic reasons. Hwang has admitted that prior to his coming to Guam on this single occasion, he had absolutely no ties to the United States nor has he adopted any significant part of what can be considered American culture or "way of life." Accordingly, a downward departure for cultural assimilation is inappropriate. Since no error occurred, Hwang's claim of ineffective assistance of counsel in this regard is also without merit.

*Failure to file Writ of Certiorari*. Hwang contends that appellate counsel was ineffective for failing to file a writ of certiorari in the Supreme Court upon his explicit request. The facts with respect to Hwang's assertion are not disputed. However, the record is clear by virtue of the Affidavit of Counsel filed with the Ninth Circuit, that counsel believed any appeal of the decision of the Ninth Circuit to the Supreme Court would be frivolous.[15] FED. R. APP. P. 4.1(e) provides, "[i]f requested to do so by the client . . . . counsel shall petition the Supreme Court for

---

[13] U.S.S.G. § 5K2.0 provides a departure is appropriate when "there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines."

[14] 8 U.S.C. § 1326 (a) governs the reentry of removed aliens and states:

Subject to subsection (b) of this section, any alien who:
    (1) has been denied admission, excluded, deported, or removed or has departed the United States while an order of exclusion, deportation, or removal is outstanding, and thereafter
    (2) enters, attempts to enter, or is at any time found in, the United States, unless
        (A) prior to his reembarkation at a place outside the United States or his application for admission from foreign contiguous territory, the Attorney General has expressly consented to such aliens reapplying for admission; or
        (B) with respect to an alien previously denied admission and removed, unless such alien shall establish that he was not required to obtain such advance consent under this chapter or any prior Act,

shall be fined under title 18, or imprisoned not more than 2 years, or both.

[15] See, Motion to Withdraw as Counsel of Record, ¶ 10 which indicates in part, "[i]n my considered judgment it could not be clearer that there are no grounds for seeking Supreme Court review that are nonfrivolous."

certiorari only if in counsel's considered judgment sufficient grounds exist for seeking Supreme Court review. See SUP. CT. R. 10."[16]

Counsel in this regard had an affirmative duty not to file for certiorari if he believed the basis for the appeal was frivolous. Hwang fails to assert any basis to support the viability of a request for certiorari.[17] Likewise, having made an independent review of the record in this matter the Court finds that there are insufficient grounds to support a request for review by the Supreme Court. Accordingly, Hwang's claim of ineffective assistance of counsel in this regard is without merit.

*Voluntariness of Guilty Plea.* Hwang claims that his plea was involuntary because he was actually innocent and had so informed his counsel. Hwang contends that after he spoke to counsel about his innocence, counsel responded by informing him that "he could never win; that if he [Hwang] did not plead guilty he would receive 25-30 years in prison but if he pled only 2-3 years."[18] Hwang asserts that the "threat" of 25-30 years in prison coerced him to enter a guilty plea. Hwang maintains counsel was ineffective in this regard. Further Hwang alleges he pled guilty because the trial lawyer told him ". . . . if [he] changed his mind the judge would not like it and it would have a negative impact on [him]. . . ." *Id.* at 10. In response to Hwang's allegations, the government proffers an affidavit of trial counsel in addition to providing the reports of Agent Kim regarding the defendant's briefing conducted on February 6, 2001 as proof of Hwang's guilt.

---

[16] Supreme Court Rule 10 provides in pertinent part:

> . . . . A petition for writ of certiorari will be granted only for compelling reasons. The following, although neither controlling nor fully measuring the Court's discretion indicate the character of the reasons the Court considers:
>
> (a) a United States court of appeals has entered a decision in conflict with the decision of another United States court of appeals on the same important matter; has decided an important federal question in a way that conflicts with a decision by a state court of last resort; or has so far departed from the accepted and usual course of judicial proceedings or sanctioned such a departure by a lower court, as to call for an exercise of this Court's supervisory power.
>
> (c) . . . . a United States court of appeals has decided an important question of federal law that has not been, but should be, settled by this Court, or has decided an important federal question in a way that conflicts with relevant decisions of this Court.

[17] Supreme Court Rule 10 further states, "[a] petition for a writ of certiorari is **rarely granted** when the asserted error consists of erroneous factual findings or the misapplication of a properly stated rule of law." (Emphasis added).

[18] *See* Defendant's Brief at Exhibit B, p. 9, Docket No. 83.

Upon consideration of the totality of the circumstances, a guilty plea is considered valid only if the defendant intelligently and voluntarily pleads guilty under the totality of the circumstances. *See, Brady v. United States,* 397 U.S. 742, 749, 90 S.Ct. 1463, 1469 (1970); *Boykin v. Alabama,* 395 U.S. 238, 242-43, 89 S.Ct. 1709, 1711-12 (1969). A plea may be involuntary if the defendant does not understand the nature of the constitutional rights he is waiving or understand what he is giving up and receiving in entering a guilty plea. *See, Henderson v. Morgan,* 426 U.S. 637, 645 n. 13, 96 S.Ct. 2253, 2257 (1976). Additionally, a guilty plea may be involuntary where induced by threats, misrepresentation, or promises "that are by their nature improper." *Mabry v. Johnson,* 467 U.S. 504, 509, 104 S.Ct. 2543, 2548 (1984).

Rule 11 imposes a series of requirements on district courts before they may accept a guilty plea. *See,* FED.R.CRIM.P. 11. These procedures are designed to ensure a defendant pleading guilty understands his constitutional rights, the plea is being entered voluntarily with a full understanding of the nature of the crime charged and the consequences of the guilty plea, and a factual basis exists for the crime to which the plea is being offered.

In accordance with Rule 11(b)(2),[19] the Court inquired as to the voluntariness of Petitioner's guilty plea at his change of plea hearing on February 5, 2001:[20]

| | | |
|---|---|---|
| Court: | | Are you fully satisfied with the advice and representation given to you in this case by your lawyer, Mr. Bischoff? |
| Hwang: | | Yes. |
| Court: | | Is your willingness to plead guilty the result of discussions that you or your lawyer had, or you and your lawyer have had with the lawyer for the government? |
| Hwang: | | Yes. |
| Court: | | Now, there should be a copy of the plea agreement in front of you there. |
| Hwang: | | Yes. |
| Court: | | Okay, was this document translated to you into your native language before you signed it? |
| Hwang: | | Yes. |

---

[19] FED. R. CRIM. P. 11(b)(2) provides:

> Before accepting a plea of guilty or nolo contendere, the court must address the defendant personally in open court and determine that the plea is voluntary and did not result from force, threats, or promises (other than promises in the plea agreement).

[20] Hwang also filed a request for an evidentiary hearing based on discrepancies in the official transcript of the change of plea hearing. *See* Docket No. 95. The Court has carefully listened to the audio tape of the proceedings concerning the change of plea in its entirety and relies on the audio tape as cited herein in fashioning its decision. Accordingly, Hwang's request for a hearing in this regard is moot and will not be further considered.

| | | |
|---|---|---|
| Court: | | Did you have an opportunity to discuss the plea agreement, after it had been translated to you but before you signed it with your lawyer? |
| Hwang: | | Yes. |
| Court: | | Does the plea agreement represent all the understandings that you and your lawyer have with the lawyer for the government? |
| Hwang: | | Yes. |
| Court: | | Do you understand the terms of the plea agreement? |
| Hwang: | | Yes. |
| Court: | | Has anyone made other promises or assurances to you of any kind in order to get you to plead guilty in this case, other than what's in the plea agreement? |
| Hwang: | | No, there is not. |
| Court: | | Do you understand that the terms of the plea agreement are only recommendations to the Court, and that the Court can reject the recommendations without allowing you to withdraw your plea of guilty? |
| Hwang: | | Yes. |
| Court: | | Do you understand that the Court can impose a sentence that is more severe than you may anticipate? |
| Hwang: | | Yes. |
| Court: | | Has anyone attempted in any way to force you to plead guilty in this case? |
| Hwang: | | No. |
| Court: | | Are you pleading guilty of your own free will because you are guilty? |
| Hwang: | | Yes. |

See, Audiotape of Change of Plea Hearing February 5, 2001 ("Audio").

These answers were given while Hwang was under oath. Hwang states that "the plea agreement was written in [E]nglish and [Hwang] did not understand it, except by the translator .... [Hwang] held no knowledge of American Law" (Defendant's Brief at Exhibit B, p. 10, Docket No. 83.). However, Hwang was provided with an interpreter during this proceeding and at no point during this hearing did Hwang indicate any difficulty understanding what was taking place. Counsel for Hwang informed the Court that the plea agreement had been translated verbatim to Hwang "more than once."[21] Further, the Court also required the interpreter to

---

[21] The relevant portion of the audio is as follows:

| | |
|---|---|
| Court: | Now Mr. Bischoff, was this plea agreement translated to your client? |
| Bischoff: | Yes, your Honor. |
| Court: | Verbatim? |
| Bischoff: | More than once. |
| Court: | Ok. This paragraph 8 |
| Bischoff: | The fact statement? |
| Court: | The fact statement, that was translated to him? |
| Bischoff: | Several times. |

11

translate the stipulation of facts contained in paragraph eight while in open court during the change of plea hearing. (*See*, the Court's review of the audio at footnote 10.)

Hwang never brought to the Court's attention that he had any difficulty understanding what was taking place either at the change of plea or at his sentencing. Hwang was informed of the maximum sentence he faced for the count to which he pled and was informed of the possibility that the Court could impose an even greater sentence.[22] Additionally, Hwang indicated he had sufficiently discussed the case with his attorney, including the potential applicability of the Sentencing Guidelines, and was satisfied with Mr. Bischoff's representation.[23]

"Solemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison,* 431 U.S. 63, 74, 97 S.Ct. 1621, 1629 (1977). Accordingly, a habeas petitioner faces a heavy burden in collaterally attacking a guilty plea based on allegations contrary to oral

---

[22] The relevant portion of the audio is as follows:

| | |
|---|---|
| Court: | Do you understand that the offense that you are pleading guilty to is a felony offense and if your plea is accepted you will be adjudged guilty of the offense? |
| Hwang: | Yes. |
| Court: | Ok. Now the maximum punishment for this offense, it doesn't mean you're going to get it, but I need to inform you of what it is, is life imprisonment, and a mandatory minimum term of imprisonment of ten years, and a four million dollar fine, and a supervised release term of at least five years. |
| Hwang: | Yes. |
| Court: | Ok. Now if you're out on supervised release and you violate a condition or conditions of the term of your supervised release, then you may be returned to jail for up to five years; do you understand? |
| Hwang: | Yes. |

[23] The relevant portion of the audio is as follows:

| | |
|---|---|
| Court: | Have you and your lawyer talked about how the Sentencing Guidelines might apply to your case? |
| Hwang: | Yes. |
| Court: | Do you understand that the Court will not be able to determine the guideline sentence for your case until after a presentence report has been completed? |
| Hwang: | Yes. |
| Court: | And you and the government have had an opportunity to challenge the reported facts and the application of the guidelines recommended by the probation officer? |
| Hwang: | Yes. |
| Court: | And that the sentence imposed may be different from any estimate your attorney may have given you? |
| Hwang: | Yes. |
| Court: | Do you also understand that after your guideline range has been determined, the Court has the authority in some circumstances to depart from the guidelines and impose a sentence that is more severe or less severe than the sentence called for by the guidelines? |
| Hwang: | Yes. |

responses given in open court during a Rule 11 colloquy. *Id.* The Court here followed the Rule 11 procedures by extensively questioning Hwang about the voluntariness of his plea.

Moreover, even if Hwang's allegations are true, his proffered evidence fails to demonstrate ineffective assistance or that his plea was involuntary. Hwang has provided no credible explanation for what he now contends were perjured statements to the Court. He is bound by those statements and has not shown extraordinary circumstances that indicate his answers under oath were not true and his plea was coerced.

Informing a defendant of the prospect of receiving a harsher sentence if he were to go to trial is not coercion sufficient to render a guilty plea involuntary. In fact it was counsel's duty to inform Hwang of as many potential consequences as are foreseeable to allow Hwang to make an informed decision regarding whether or not to accept the plea agreement.[24] Any erroneous information given Hwang by counsel regarding the minimum sentence was corrected by the Court informing Hwang of the minimum sentence of 10 years and maximum of life.[25] After being advised of the statutory maximums and minimums Hwang did not seek to withdraw his plea. Accordingly, Hwang's claim and request for an evidentiary hearing in this regard is denied. *See United States v. Leonti,* 326 F.3d 1111, 1116 (9th Cir.2003) (noting that an evidentiary hearing is not warranted if the allegations, "when viewed against the record, do not state a claim for relief or are so palpably incredible or patently frivolous as to warrant summary dismissal") (citation omitted).

*Counsel's Investigation of Case.* Hwang contends that trial counsel was ineffective for failing to further investigate several matters with respect to his case. Specifically Hwang asserts that counsel failed 1) to obtain evidence that Hwang had never been out of Korea prior to coming to Guam and that Hwang lacked funds to travel without assistance from his co-defendant; 2) to contact the employee of the car rental agency regarding the co-defendant's requesting Hwang to pay for the vehicle and 3) to contact the landlord of the apartment rented by Hwang concerning conversations between Hwang and his co-defendant.

---

[24] Assuming Hwang's contention that he was told he would get 25-30 years if he lost at trial is true, the Court notes that the guideline range for the charged offense to which he pled would have been 235-293 months (19.3-24.4 years) not including the potential enhancement for conviction of the remaining offenses which were dismissed pursuant to the plea agreement. Thus counsel's assessment of Hwang's probable sentence if he was convicted at trial was realistic.

[25] The Court notes that Hwang provides conflicting information in his pleading regarding exactly what he was told concerning the minimum sentence he would receive under the plea agreement. The number varies between 2-3 years to 10, and 14 years. See Defendant's Brief at Exhibit B, p. 9, ll. 14, Docket No. 83. These discrepancies alone point cast doubt upon Hwang's account concerning what he was told.

13

The Ninth Circuit recognized in *Lambert v. Blodgett*, 393 F.3d 943 (9th Cir. 2004), that "Courts have generally rejected claims of ineffective assistance premised on a failure to investigate where the record demonstrates that the defendant would have pled guilty despite the additional evidence and where the additional evidence was unlikely to change the outcome at trial. *See, e.g., Hill v. Lockhart*, 474 U.S. at 56, 106 S.Ct. 366 (1985)." In discussing the grave finality of guilty pleas, the Supreme Court has stated:

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not [competent].

*Tollett v. Henderson*, 411 U.S. 258, 266-67, 93 S.Ct. 1602,(1973). If a defendant pled guilty knowingly and voluntarily, he cannot show actual prejudice resulted from his trial attorney's failure to more thoroughly investigate the case before he pled guilty. *Id.* Assuming the witnesses would testify consistently with Hwang's assertions, there is not a reasonable probability under an objective standard that, but for the evidence that would be obtained, Hwang "would have refused to plead and would have gone to trial," *Sanchez v. United States*, 50 F.3d at 1454 (9th Cir.1995). Further, the existence of these witnesses were known to Hwang at the time he entered his guilty plea. Accordingly, in entering the plea, he knowingly and voluntarily waived his right to call those witnesses or raise the potential defenses previously mentioned.[26]

---

[26] The relevant portion of the audio is as follows:

| | |
|---|---|
| Court: | Ok. Do you understand that you have a right to plead not guilty to any offense charged against you and to persist in that plea? |
| Hwang: | Yes. |
| Court: | That you would then have the right to a trial by jury? |
| Hwang: | Yes. |
| Court: | That at trial you would be presumed to be innocent and the government would have to prove your guilt beyond a reasonable doubt? |
| Hwang: | Yes. |
| Court: | And that you would have the right to the assistance of a lawyer for your defense; the right to see and hear all the witnesses and have them cross-examined in your defense. |
| Hwang: | Yes. |
| Court: | You also have the right on your own part to refuse to testify unless you voluntarily chose to do so in your own defense. |
| Hwang: | Yes. |
| Court: | And you have the right to the issuance of subpoenas to force the attendance of witnesses to testify in your defense. Do you understand so far? |
| Hwang: | Yes. |

## CONCLUSION

After conducting a complete review of the record, the Court does not find that counsel at trial, sentencing or on appeal were ineffective for failing to raise the non-meritorious issues addressed by Hwang in the instant petition. Accordingly, Hwang's motions for both an evidentiary hearing and relief pursuant to 28 U.S.C. § 2255 are DENIED.

**IT IS SO ORDERED** this 26 day of September, 2005.

_____
Lloyd D. George
United States District Judge

---

| | |
|---|---|
| Court: | Do you understand that should you decide not to testify or to put on any evidence, these facts cannot be used against you? |
| Hwang: | Yes. |
| Court: | Do you further understand that by entering a plea of guilty, if that plea is accepted by the Court, there will be no trial, and you will have waived or given up your right to a trial, as well as those other rights associated with a trial that I have just described? |
| Hwang: | Yes. |

* The Honorable Lloyd D. George, United States Senior District Judge for Nevada, by designation.